UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBORAH WHITCHER,

       Plaintiff,

v.                                                Civil Case No. 20-11449
                                                Honorable Linda V. Parker

MCLAREN LAPEER REGION
and MCLAREN HEALTH CARE
CORPORATION,

       Defendants.
_____/

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF NO. 19)**

Plaintiff filed this lawsuit against Defendants on June 4, 2020, asserting two counts: (I) retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and Michigan's Elliot-Larsen Civil Rights Act ("ELCRA), and (II) age discrimination in violation of the Age Discrimination in Employment Act and ELCRA. (ECF No. 1.) Defendants filed a motion for summary judgment (ECF No. 19), which has been fully briefed (ECF Nos. 23-25). Subsequent to the filing of the motion, a stipulated order was entered dismissing Defendant McLaren Health Care Corporation and Count II of Plaintiff's Complaint. (*See* ECF No. 21.) Therefore, remaining before the Court is Defendant McLaren Lapeer Region's request for summary judgment with respect to Plaintiff's retaliation claim. (ECF

No. 19.) Finding the facts and legal arguments adequately presented in the parties' filings, the Court is dispensing with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f). For the reasons that follow, the Court grants the motion.

**I.      Standard of Review**

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has the initial burden of showing "the absence of a genuine issue of material fact." *Id.* at 323. Once the movant meets this burden, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted). To

demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252. The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See Liberty Lobby*, 477 U.S. at 255.

## II.   Factual Background

Plaintiff was employed as a human resources consultant with McLaren Lapeer Region (hereafter "Defendant" or "McLaren") beginning December 2014. (Pl. Dep. at 5, ECF No. 19-2 at Pg ID 116.) She was promoted to the position of human resources manager in January 2016, which provided increased compensation and additional responsibilities. (*Id*.) Plaintiff's increased responsibilities included recruitment for vacant positions within the hospital and supervision of the two human resources consultants. (*Id*.)

Derek Peters, the human resources director, was Plaintiff's immediate supervisor until he left the hospital in March 2018. (*Id*. at 6-7, Pg ID 116; Hulett Aff. ¶ 4, ECF No. 19-6 at Pg ID 189.) Plaintiff then reported to Rachelle Hulett, who was regional vice president of human relations for McLaren Health Care Corporation. (Pl. Dep. at 7, ECF No. 19-2 at Pg ID 116; Hulett Aff. ¶ 6, ECF No. 19-6 at Pg ID 189.) In that position, Hulett supported three hospitals: McLaren Flint, McLaren Lapeer Region, and McLaren Greater Lansing. (Hulett Dep. at 8,

ECF No. 19-3 at Pg ID 152.) Upon Peters' departure, Hulett began spending more time at the hospital where Plaintiff worked. (Hulett Aff. ¶ 5, ECF No. 19-6 at Pg ID 189.) In April 2018, Hulett recommended that Plaintiff receive a pay increase, which was approved by McLaren's president and chief executive officer, Christopher Candela. (Hulett Dep. at 31, ECF No. 19-3 at Pg ID 158; 2/27/18 emails, ECF No. 19-8 at Pg ID 197.)

Hulett had not worked directly with Plaintiff until Hulett began supervising the McLaren HR department upon Peters' departure. (Hulett Dep. at 20, 32, ECF No. 19-3 at Pg ID 155, 158; Hulett Aff. ¶ 6, ECF No. 19-6 at Pg ID 189.) At that time, Hulett learned that department managers had complaints about recruitment for their vacant positions, particularly nursing positions. (Hulett Aff. ¶ 8, ECF No. 19-6 at Pg ID 189.) Specifically, Plaintiff was not communicating adequately with department managers regarding the status of recruiting individuals for their vacant positions and was not getting positions filled. (Hulett Dep. at 11-12, ECF No. 19-3 at Pg ID 153; Hulett Aff. ¶ 9, ECF No. 19-6 at Pg ID 190.) Hulett met with Plaintiff to discuss the issue, recommending that Plaintiff schedule weekly meetings with managers to keep them "in the loop." (Hulett Dep. at 12, ECF No. 19-3 at Pg ID 153.)

By August 2018, managers were complaining to Candela about unfilled vacancies in their departments. (Hulett Aff. ¶ 10, ECF No. 19-6 at Pg ID 190; Def.

Mot. Exs. H & I, ECF Nos. 19-9 & 19-10 at Pg ID 199, 202-03.) In March 2019, Hulett shifted some recruitment responsibilities to the human resources consultants to alleviate Plaintiff's workload, although Plaintiff continued to be responsible for hiring employees for a few departments and for nursing and nursing aides for all departments. (Hulett Aff. ¶¶ 12, 13, ECF No. 19-6 at Pg ID 190; Pl. Dep. at 12-13, ECF No. 19-2 at Pg ID 117-18.) Managers continued to complain about the recruitment process, however, bringing a petition to the Board of Trustees in April 2019. (*Id.* ¶ 14; *see also* Def. Mot. Ex. J, ECF No. 19-11 at Pg ID 208.) In the meantime, on April 1, Kent Allen assumed the role of Regional Director of Labor/Employee Relations, primarily supporting McLaren. (Hulett Dep. at 10, 20, ECF No. 19-3 at Pg ID 153, 155; Allen Aff. ¶ 1, ECF No. 19-5 at Pg ID 182.)

Hulett informed Allen about some of the problems she was seeing with regard to Plaintiff's performance, explaining the issues the hospital was having with delays in recruitment and follow-up items with department managers. (Hulett Dep. at 29-30, ECF No. 19-3 at Pg ID 158.) Hulett asked Allen to observe what was happening in the human resources department and provide her with an assessment after his first 60 or 90 days. (*Id.*) Allen met with the department managers after he began working at the hospital and they universally told him that it was taking too long to fill vacant nursing positions and that they were not being informed about the status of recruiting for their vacant positions. (Allen Aff. ¶¶ 2,

5

3, ECF No. 19-5 at Pg ID 182.) Allen had additional concerns regarding Plaintiff's performance when she indicated that she had attempted to contact several applicants for an open position, but he subsequently obtained information suggesting she in fact had not done so. (*Id*. ¶¶ 9-21, Pg ID 183-84.)

In the meantime, Allen received complaints about hospital managers violating the dress code by wearing tights and other prohibited items. (Allen Dep. at 11, ECF No. 19-4 at Pg ID 170; Email, ECF No. 19-13.) Allen interviewed one of the managers, Whitney Williams, concerning the leggings she purportedly was wearing. (Allen Dep. at 11, ECF No. 19-4 at Pg ID 170.) Williams called Plaintiff and complained about the conversation, claiming that Allen sexually harassed her. (Pl. Dep. at 64, ECF No. 19-2 at Pg ID 130; Pl. Aff. ¶ 1, ECF No. 24-3 at Pg ID 447.) Plaintiff took notes during her conversation with Williams, although she never gave or showed them to anyone. (*See* Notes, ECF No. 19-14; Pl. Dep. at 68, ECF No. 19-2 at Pg ID 131.) She never discussed her conversation with Williams or William's accusations with anyone, as Williams indicated that she wanted to meet with Candela first and no one ever asked Plaintiff about Williams' conversation with her. (Pl. Dep. at 65-76, ECF No. 19-2 at Pg ID 131-33; Notes at 2, ECF No. 19-14 at Pg ID 217).

Williams did bring her complaint to Candela, who asked Hulett to investigate. (Hulett Dep. at 33, ECF No. 19-3 at Pg ID 159.) Hulett did not

discuss the matter with Plaintiff because she thought it was inappropriate based on the fact that Plaintiff reported directly to Allen. (*Id.*) Plaintiff believes that Allen retaliated against her because she took Williams' report alleging sexual harassment by Allen. (*See* Pl. Resp. Br. at 1-2, 8, ECF No. 24 at Pg ID 383-84, 390; *see also* Pl. Dep. at 60, ECF No. 19-2 at Pg ID 129.)[1] Plaintiff claims that Allen was rude to her, cussed at her, and cut off conversations with other employees when Plaintiff entered the office. (Pl. Dep. at 60-61, ECF No. 19-2 at Pg ID 129-30.) Plaintiff testified, however, that from the first day she began working with Allen, he made comments to her that made her uncomfortable and that she found rude. (*Id.* at 37-48, Pg ID 124-27.)

On July 3, Allen and Hulett met with Plaintiff to discuss ways Plaintiff could improve her job performance. (Allen Dep. at 12, ECF No. 19-4 at Pg ID 170; Hulett Dep. at 25, ECF No. 19-3 at Pg ID 157.) Prior to the meeting, Allen and Hulett began preparing a performance improvement plan ("PIP"), which they presented to Plaintiff and sought her input on ways she could improve and how improvements could be achieved. (Allen Dep. at 13, ECF No. 19-4 at Pg ID 171; Hulett Dep. at 21, ECF No. 19-3 at Pg ID 21.) Plaintiff believed, based on her

---

[1] During her deposition, Plaintiff referred to "sexual harassment claims from two employees" (*see* Pl. Dep. at 60, ECF No. 19-2 at Pg ID 129); however, the record does not reflect any report other than the one made by Williams.

experience in human resources, that a PIP was the first step to an inevitable termination. (Pl. Dep. at 88-89, ECF No. 19-2 at Pg ID 136-37.)

On Friday July 5, two days after meeting with Allen and Hulett, Plaintiff concluded that she was not going to succeed in the position and decided to resign. (*Id*. at 88-90, Pg ID 136-37) She cleared her personal belongings from her office that day. (*Id*. at 90, Pg ID 137.) On Monday July 8, after consulting with her physician, Plaintiff submitted her resignation. (*Id*.; 7/8/19 Ltr., ECF No. 19-18 at Pg ID 320.)

## III. Applicable Law and Analysis

Plaintiff alleges that she was retaliated against and suffered a constructive discharge in response to her "protected activity"—specifically because she "opposed acts that were unlawful under Title VII and/or ELCRA" and "received, processed, and/or otherwise assisted with [William]'s sexual discrimination and harassment complaint against Kent Allen." (Compl. ¶¶ 21, 22, ECF No. 1 at Pg ID 5.) Plaintiff does not claim to have direct evidence to support her retaliation claim. (*See* Pl. Resp. Br. at 8, ECF No. 24 at Pg ID 390.) Therefore, to begin to prove her claim, Plaintiff must establish a prima facie case of retaliation.[2] *Jackson v.*

---

[2] The burden-shifting framework set forth in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802-04 (1973), applies to a claim of retaliation where the plaintiff lacks direct evidence. *Jackson*, 999 F.3d at 344. The plaintiff first must demonstrate a prima facie case of retaliation. *Id*. If the plaintiff succeeds, the

8

*Genesee Cnty. Rd. Comm'n*, 999 F.3d 333, 344 (6th Cir. 2021) (citing *Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 613 (6th Cir. 2019)).

A prima facie case of retaliation under Title VII and ELCRA requires proof that: (1) the plaintiff "engaged in protected activity"; (2) "the defendant was aware of the protected activity"; (3) the plaintiff was subjected to a "materially adverse" employment action; and (4) a causal connection existed between the protected activity and adverse action. *Id*. at 343-44 (quotation marks and citations omitted). Defendant argues that Plaintiff cannot satisfy any of these elements. The Court finds it necessary to address only the first.

Plaintiff claims she engaged in protected activity under both the opposition clause and participation clause of Title VII and ELCRA. Title VII provides:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a). ELCRA similarly reads:

---

defendant must "demonstrate some 'legitimate, nondiscriminatory reason' for its action." *Id*. (quoting *McDonnell Douglas*, 411 U.S. at 802). "If the defendant produces such a reason, the burden shifts back to the plaintiff to show that the proffered reason was a mere pretext for [retaliation]." *Id*. (citing *McDonnell Douglas*, 411 U.S. at 804.

> Two or more persons shall not conspire to, or a person shall not:
>
> (a) Retaliate or discriminate against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act.

Mich. Comp. Laws § 37.2701. The Sixth Circuit has found the legal standard for a retaliation claim under Title VII and ELCRA to be identical. *Wasek v. Arrow Energy Servs., Inc.* 682 F.3d 463, 472 (6th Cir. 2012).

Neither Title VII nor ELCRA define "opposed" as used in the opposition clause *See* 42 U.S.C. §§ 2000e, 2000e-3; Mich. Comp. Laws §§ 37.2202, .2701. The Supreme Court has advised that "the term 'oppose' . . . carries its ordinary meaning: 'to resist or antagonize . . .; to contend against; to confront; resist; withstand[.]'" *Crawford v. Metro. Gov't of Nashville & Davison Cnty.*, 555 U.S. 271, 275 (2009) (internal citation omitted and first ellipsis added) (quoting Webster's New Int'l Dictionary 1710 (2d ed. 1957)). As the Sixth Circuit recently provided: "Examples of opposition activity protected under Title VII include 'complaining to anyone (management, unions, other employees, or newspapers) about allegedly unlawful practices; [and] refusing to obey an order because the worker thinks it is unlawful under Title VII.'" *Jackson*, 999 F.3d at 344-45 (quoting *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 721 (6th Cir. 2008)); *see*

*also Crawford*, 555 U.S. at 276 (quotation marks, citations, and ellipsis removed) (explaining that "[w]hen an employee communicates to her employer a belief that the employer has engaged in a form of employment discrimination, that communication virtually always constitutes the employee's opposition to the activity"). The Sixth Circuit has further provided that the plaintiff's opposition must have been expressed "in a reasonable manner" and the plaintiff must have had "a reasonable and good faith belief that the opposed practices were unlawful." *Jackson*, 999 F.3d at 345 (quoting *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 579, 580 (6th Cir. 2000)). The term is interpreted in the same manner under ELCRA. *See Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1311-12 (6th Cir. 1989).

Plaintiff does not identify any oppositional behavior. She undoubtedly took Williams' report regarding Allen's alleged harassing conduct. However, by her own admission, she never took the matter further. She did not discuss Williams' allegations with or report Allen's alleged misconduct to anyone. She did not share her notes from her conversation with Williams with anyone. Plaintiff identifies no evidence suggesting that she complained to anyone or communicated her belief to anyone that Allen sexually harassed Williams. In short, she did not "oppose" Allen's alleged unlawful conduct.

11

Plaintiff appears to believe that simply taking Williams' report constitutes opposition to satisfy the first prong of her prima facie case. (*See* Pl. Resp. Br. at 8, ECF No. 24 at Pg ID 390.) She fails to cite a single case supporting this position. Notably, the Sixth Circuit in *Jackson* found that the plaintiff's investigation into complaints of discrimination did not amount to protected activity because she failed to reach a conclusion that discrimination occurred. 999 F.3d at 346-47. The Court noted that without a reasonable good faith belief that the defendants discriminated based on the employees' protected status, the investigation of the complaint was not protected under Title VII. *Id.* at 347. Here, Plaintiff did not even investigate Williams' complaint.

Plaintiff's role in taking Williams' report does not establish protected activity under the participation clause, either. The Sixth Circuit has stated that the participation clause "protects an employee's participation in an employer's internal investigation into allegations of unlawful discrimination *where that investigation occurs pursuant to a pending EEOC charge*." *Abbott v. Crown Motor Co.*, 348 F.3d 537, 543 (6th Cir. 2003) (emphasis added) (citing *EEOC v. Total Sys. Serv., Inc.*, 221 F.3d 1171, 1174 & n.2 (11th Cir. 2000)); *see also Jackson*, 999 F.3d at 348 (holding that the plaintiff's participation in the investigation of another employee's informal discrimination complaints, which were not pursuant to a formal charge with an administrative agency, was not protected activity under the

12

participation clause). As the Eleventh Circuit explained in *Total Systems*, the participation clause "protects proceedings and activities which occur in conjunction with or after the filing of a formal charge with the EEOC; it does not include participating in an employer's internal, in-house investigation, conducted apart from a formal charge with the EEOC." 221 F.3d at 1174 & n.2; *see also Hamade v. Valiant Gov't Servs., LLC*, 807 F. App'x 546, 550 (6th Cir. 2020) (refusing to disturb prior Sixth Circuit precedent distinguishing conduct related to internal investigations apart from a formal charge with the EEOC and conduct pursuant to pending EEOC charges); *Booker*, 879 F.2d at 1313 (concluding that "any activity by the employee prior to the instigation of statutory proceedings" must come under the opposition clause because instigation of statutory proceedings is a prerequisite to protection under the participation clause). This clause, like the opposition clause, is interpreted in the same manner under ELCRA. *See Jackson*, 999 F.3d at 348; *see also Booker*, 879 F.2d at 1312. Therefore, even if Plaintiff's role in taking Williams' statement constitutes participation in Defendant's internal investigation into allegations of unlawful harassment, that investigation was not pursuant to a pending EEOC charge.

     For these reasons, Plaintiff fails to create a genuine issue of material fact with respect to her engagement in protected activity. As such, she cannot establish a prima facie case of retaliation and Defendant is entitled to summary judgment.

13

Accordingly,

**IT IS ORDERED** that Defendants' summary judgment motion (ECF No. 19) is **GRANTED**.

**IT IS SO ORDERED.**

                                                s/ Linda V. Parker
                                                LINDA V. PARKER
                                                U.S. DISTRICT JUDGE

Dated: January 19, 2022